CITIZENS MUTUAL INSURANCE COMPANY v EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN

1. INSURANCE—EXCLUSIONS—INDEPENDENT CONTRACTORS—GENERAL SUPERVISION—NEGLIGENT ACTS.

    "General supervision" of the actions of an independent contractor employed by a city to install a sewer line does not extend to the city's keeping a wrench or hydrant key required to operate a shutoff valve on a water main available for use in a possible emergency; therefore, an insurance policy which extended coverage to the city for liability resulting from "general supervision" of a contractor, but excluded coverage for any other act or omission of the city did not insure the city for liability resulting from the failure to keep the hydrant key handy.

2. INSURANCE—DEFENSES—ESTOPPEL.

    An insurer is not estopped to assert a policy defense where it timely raised the defense and participated in litigation under a reservation of rights.

Appeal from Gratiot, Leo W. Corkin, J. Submitted Division 3 June 5, 1973, at Grand Rapids. (Docket No. 14689.) Decided September 26, 1973. Leave to appeal granted, 391 Mich —.

Complaint by Citizens Mutual Insurance Company against Employers Mutual Liability Insurance Company of Wisconsin for reimbursement of money paid under a policy of insurance. Judgment for plaintiff. Defendant appeals. Judgment vacated and remanded with instructions to enter a judgment of no cause of action.

*Fortino, Plaxton & Moskal,* for plaintiff.

REFERENCES FOR POINTS IN HEADNOTES
[1] 44 Am Jur 2d, Insurance § 1424.
[2] 43 Am Jur 2d, Insurance § 1101 *et seq.*

*Ralph B. Taylor,* for defendant.

Before: R. B. BURNS, P. J., and FITZGERALD and O'HARA,* JJ.

O'HARA, J. The City of Alma is a Michigan municipal corporation.

Citizens Mutual Insurance Company is its general liability insurer.

E. G. McDermott and Hertel-Deyo are construction contractors, who for the purpose of this opinion were joint venturers, who contracted with Alma to install sewer lines in Alma. We will refer herein to the joint venturers as the contractor.

Employers Mutual Liability Insurance Company of Wisconsin is an insurance carrier duly admitted to do business in Michigan. It writes public liability insurance. It issued such a policy to the contractor.

Employers Reinsurance Corporation is not a party to this litigation but its role in the proceedings requires that we refer to it herein. To avoid misunderstanding or possible confusion we will refer to this company as the reinsurer. Citizens bought a policy from reinsurer to cover in part the payment of claims by Citizens on behalf of its various insureds.

All of the foregoing is clear. What follows is much less clear. The reason is expressed in 169 ALR 387.

"The question of apportionment of loss between specific and blanket insurance policies with which this annotation is concerned enjoys the doubtful distinction of being universally recognized as constituting one of the most perplexing and troublesome problems in the whole law of insurance."

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

The problem is troublesome enough in cases which go through to verdict and judgment, so that at least a trial judge or an appellate court can rely in total security upon findings of fact by the trier of questions of fact.[1] In this case the parties settled the original lawsuit out of which this litigation grew, so there are no specific findings of fact as to negligence and proximate cause. To add frosting to this litigious cake, Employers appeared and participated in the defense of the negligence action under a denial of liability and a reservation of rights.

So much for the identification of the parties and a general statement of the legal problems. We review now the factual problem.

When Alma decided to install the sewer system and engaged the contractor to do the work, it required that the contractor obtain a policy of liability insurance to protect Alma from claims arising out of what can be described as the "sewer job". The contractor obtained the policy from Employers. A workman was killed, either by suffocation or drowning, when a water main was ruptured in the trench for the new sewer line. The gushing water caused the collapse of the side walls of the trench. The shutoff valve required a wrench or hydrant key to cut off the flow. Co-workers of the deceased ran to the valve, but the wrench or key was not there. Their efforts to extricate the trapped worker failed. The administratrix of his estate sued Alma. The case went to trial. After several days it was settled for $45,000. Citizens paid $25,000. Reinsurer paid $20,000. Employers paid nothing but did offer $5,000 in exchange for a release of all claims against it.

Citizens sued Employers for the $45,000 paid to

[1] There are, of course, infrequent exceptions.

the estate. Citizens contended that Employers' policy covered an incident which caused the worker's death, and furthermore, that if the negligent act did not come within the terms of the policy, Employers was estopped to assert the policy defense, because Alma relied on Employers to issue a policy which would protect Alma against any claim growing out of the sewer job. The record supports the fact that Alma's then director of public works did not see or read the policy Employers issued but did receive and keep in his file a certificate of insurance attesting that the contractor had obtained insurance in the required amounts. He testified that it was not "customary" to see or read the policy and that he relied upon the certificate to support his approval that Alma enter into the contract with the contractors. It may be worthy of more than passing notice that the policy Employers issued has a large rectangular space to the left of the designation of the named insured. It is set off by a thin red line of the same shade of ink in which the name of the issuing company is printed. It reads: "PLEASE READ YOUR POLICY". Perhaps other directors of public works of other municipal corporations might do well to consult with the city attorney or corporation counsel or whoever the city's legal advisor is before approving the execution of a contract calling for insurance protection when all the director has seen is a "certificate of insurance". Additionally, we suggest that a precise record be kept in something other than the memory of the city employee as to exactly what coverage is demanded by the municipality, and insistence upon no exclusions which limit the coverage written.

The able and experienced trial judge favored us

with a 13-page written opinion. His discussion of the issue and his findings of fact have been extremely helpful. The rhetorical questions the opinion asks are much the same as occurred to us after oral argument and our post-argument conference. They arise out of the limiting effect of exclusion "b" upon the insuring agreement. Alma is the named insured. It is designated as a municipality. The policy is a standard form with an insert specifying the "Definition of Operations", which reads "Operations performed for NAMED INSURED at the premises herein designated by Edward G. McDermott Co. and Hertel-Deyo".

The insuring agreement which is relevant reads:

"Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person, caused by accident and arising out of the operations hereinafter defined."

Exclusion "b" reads:

"This policy does not apply:
"(b) To any act or omission of the named insured or any of his employees, other than general supervision of work performed for the named insured by independent contractors."

The complaint alleges that Alma was negligent:

"a. In failing to adequately inspect and supervise * * * construction operation.
"b. In failing to provide [contractor] with a hydrant key or turn off wrench when then use of said instrument would have averted the death of [decedent].
"c. In failing to leave a hydrant key in or near the hydrant control valve.
"d. In removing said key from the area while Defend-

ant had knowledge that said construction was under-
way.

"e. In failing to notify [contractor] or any of its
employees that the Defendant had removed the hydrant
key from its proper place."

The trial judge noted that:

"It appears to the court that a fact of some impor-
tance is that there was never any determination that
the City of Alma or the contractor were liable for any
damages to plaintiff. * * * While it may be * * *
interesting * * * to speculate on the verdict a jury
might render. * * * Can it be said that Employers who
denied any liability, contributed nothing to the settle-
ment, and was deprived of the opportunity to have its
liability determined is now obligated to reimburse
plaintiff for the amount of the settlement."

We also wonder if it can be said.

Throughout the whole case and with particular
vigor on oral argument Citizens contends (and the
trial court adverted to this in his opinion) that it
was "forced" to settle by the reinsurer. A member
of the panel was moved to ask during argument
how Citizens was "forced". Did reinsurer use a
gun? We can't possibly know what went on be-
tween Citizens and its reinsurer through their
respective counsel that ended up in the settlement.
Frankly, we don't know how it would affect the
issue before us.

We have no findings as to whether Alma did any
of the things decedent's administratrix alleged it
did. We obviously can make no finding of fact in
this regard. All we have before us is the question
of whether what the administratrix *contended*
Alma did fell within the insuring agreement or
was within exclusion "b".

The trial judge held that:

"[T]he failure to have the hydrant key handy may have been one of several proximate causes of [decedent's] death, but it could hardly be said to have been, in and of itself, the sole proximate cause."

We certainly can't make that determination in this Court. The trial judge further found:

"[I]n the opinion of the court the failure of the City to make sure that the hydrant key was always available could very well be considered a failure of *general supervision* rather than an act of negligence." (Emphasis supplied.)

This is a conclusion of law with which we are unable to agree. "General supervision" of the actions of an independent contractor digging a sewer line does not and cannot, in our view, extend to keeping a hydrant key available for use in a possible emergency. A negligent act on the part of the city it might well be. The contingency that eventuated might well have been reasonably foreseeable. This still is part and parcel of a negligent act. It was the "act or omission of the named insured [Alma] or * * * his employees". This is just exactly what Employers clearly, plainly, and unequivocally excluded from its coverage.

We have not failed to consider the question of the alleged estoppel. The trial judge did not address himself to it specifically. Perhaps it is not really before us. However, to obviate an unnecessary remand to us in the event appeal to the Supreme Court is sought and granted and that Court would consider the issue viable in this Court, we do not find from the record that degree of proof which would establish an estoppel to bar Employers from asserting its policy defense.

We are asked to reduce the verdict to the $25,-000 Citizens itself paid. We are asked to pass upon

the question of primary liability. In view of our holding these issues need not be discussed.

We simply construe the language of a contract in the nature of an insuring agreement between Alma and Employers to determine what, if any, redress Citizens had against Employers because Citizens and its reinsurer paid a claim they contended Employers should have paid. Citizens knew and reinsurer knew that Employers had raised a policy defense and was participating in the litigation to whatever extent it did under a reservation of rights. What motivated Citizens to join with its reinsurer in the settlement we cannot be expected to know. In any event assuming Employers had prevailed on the policy defense question in any prior action Citizens would be in the same position it is now. After all it did insure Alma against general public liability. What it did was doubtless required under its policy, that is to defend or settle as it chose. We know of no legal manner in which the reinsurer could force Citizens to do what it did.

For the reasons herein discussed we vacate the verdict and judgment of the trial court and direct the entry of a verdict of no cause of action. Appellant may tax costs.

All concurred.